## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

**SARAH SEBREN**
**Plaintiff and**
**Counterclaim-Defendant**

**v.**                                         **C.A. No.1:18-cv-00667-MSM-PAS**

**CASBY HARRISON, III**
**Defendant and**
**Counterclaim-Plaintiff**

### DEFENDANT CASBY HARRISON'S MEMORANDUM IN SUPPORT OF OBJECTION TO PARTIAL SUMMARY JUDGMENT

On September 3, 2019, the parties entered a stipulation that Defendant Harrison "only paid (Plaintiff) Sebren as an independent contractor even though she qualified as an employee under the Fair Labor Standards Act, the Rhode Island Minimum Wage Act, and the Rhode Island Payment of Wages Act." (Exhibit A)

Defendant's concession was an effort to streamline the litigation, and focus on those areas in dispute, and reduce potential liability for attorney's fee.[1]

This case is really about every plaintiff's lawyer's dream --- the million dollar case ---- No question of liability and plenty of insurance; however, Casby Harrison's dream turned into his worst nightmare.

Plaintiff Sarah Sebren worked for Casby Harrison, III, Esq., d/b/a Harrison Law Associates, for nearly ten (10) years. He never paid her as an employee. She performed work as

---

[1] Accordingly, Defendant prophylactically objects to any award of attorney fees for work put into this unnecessary motion and long, extensive, well researched and ultimately unnecessary memorandum and attachments.

his secretary, receptionist, and para-legal while she attended law school. She graduated in 2008 and was admitted to the bar on June 12, 2017.

Just around that time, a colleague of Mr. Harrison referred a severe personal injury case to his office. Mr. Harrison had Ms. Sebren go to see the client in the hospital.

Ms. Sebren conducted the interview and returned with a signed engagement letter. Ms. Sebren claimed that Harrison Law Associates never had such a letter, but later developments proved that untrue. [2]

Robert Perry suffered severe personal injuries when he was struck while standing behind his disabled car. The negligent driver had a million dollar policy limit. Mr. Harrison instructed Ms. Sebren to work up the file, *i.e.*, acquire the medical bills and the like.

Mr. Perry was a very demanding client, and Ms. Sebren often catered to his non-legal demands such as running errands for him, delivering cigarettes, etc.

At some point in time, Mr. Harrison, in recognition of Sebren's efforts, offered a 50/50 split of the anticipated $333,000 fee; Sebren agreed.

However, apparently this was not enough for Attorney Sebren.

On December 29, 2017, she announced her departure from Harrison Law Associates, also telling Mr. Harrison that she was taking the Perry case with her.

Efforts to amicably resolve the fee issue came to no avail, and this case was filed on December 10, 2018.

On or about January 15, 2018, Plaintiff Sebren e-mailed to Defendant Harrison,

> "I am willing to offer to compromise before Bob initiates
> class action claims, and before I request that those include
> claims for hostile work environment, which we can easily show . . .

---

[2] See, Plaintiff's Complaint ¶ 37, ". . . Harrison never had a written fee agreement with the Client."

> I hope you speak to your family and friends, and consider all
> possible consequences. . ." (Defendant's Counterclaim, ¶ 36.)

The extortion threat did not deter Mr. Harrison.  True to her word, Ms. Sebren brought

the instant case as a collective and class action, seeking damages for the ten (10) years next prior

to filing.

Chief Judge McConnell dismissed the collective/class action allegations of the case and

limited the sole Plaintiff to her own three (3) year claim for wages. [3]

## **Standard of Review**

The standard of review upon a motion for summary judgment is well known to this

Court.

> Summary judgment's role in civil litigation is "to pierce the
> pleadings and to assess the proof in order to see whether there
> is a genuine need for trial." *Garside v. Osco Drug Inc.,* 895 F.2d
> 46, 50 (1st Cir. 1990).  Summary judgment can be granted only
> when "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show there
> is no genuine issue as to any material fact and the moving party
> is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.
> "A dispute is genuine if the evidence about the fact is such that a
> reasonable jury could resolve the point in the favor of the
> non-moving party.  A fact is material if it carries with it the
> potential to affect the outcome of the suit under the applicable
> law." *Santiago-Ramos v. Centennial P. R. Wireless Corp.,*
> 217 F.3d 46, 52 (1st Cir. 2000).
>
> *Segui v. M & M Communications, Inc., et al,* C.A. No. 1:14-cv-442,
> Memorandum and Order p. 7 (Sept. 3, 2020).

---

[3]  Accordingly, the operative time period is December 10, 2015 through December 29, 2017 --- the day she left
Defendant's office.

## SEBREN'S CLAIMS

### FLSA Claims (Statute of Limitations)

The FLSA statute of limitations is two (2) years, unless the employer, "knew or showed reckless disregard" that its practice violated the FLSA.  Mere negligence is not enough.  See *McLaughlin v. Rickland Shoe Co.,* 486 U.S. 128 (1988).

In *Herman v. Hector/Nieves Transportation, Inc.,* 91 F Supp 2nd 435 (D.P.R., 2000) the Court found the requisite willfulness to extend the statute of limitations.  But there, the defendant actually knew of the requirements, but continued to render pay to his employees and keeping inadequate employment records.  See also *Acosta v. Special Police Force Corp.,* 295 F Supp 3d 47 (D.P.R. 2018).

However, the First Circuit has rejected the notion that a failure to investigate FLSA compliance, without more would constitute willfulness.  See *McGrath v. City of Somerville,* 419 F Supp 3d 233(D. Mass. 2019).

See also *Pineda v. Shriner Services,* C.A. No. 16-12217-FD8 2020 U.S. Dist. Laws 177867 (D. Mass, Sept. 28, 2020) where willfulness was found, since the employer ignored repeated employee complaints about violations.

Here, Mr. Harrison confirms that neither Ms. Sebren nor any other associate made any such complaints.

Likewise, having mis-categorized Ms. Sebren as an independent contractor, without objection, Mr. Harrison could not have been on notice to ascertain the FLSA requirements then existing.

## FLSA DAMAGES

Accordingly, the correct statute of limitations encompasses the two years next prior to the filing of this complaint, *viz.*, December 10, 2018.

So the employment at issue is December 10, 2016 through December 29, 2017, when Plaintiff left Mr. Harrison's office. That term must be further distinguished between her engagement before and after she was admitted to the bar on June 12, 2017.[4]

Plaintiff was paid as follows:

| | | | |
|---|---|---|---|
| (2 weeks) | December 16, 2016 – December 31, 2016 | $ 1,000.00 | |
| (24 weeks) | January 2, 2017 – June 12, 2017 | 13,008.00 | $14,008.00 |
| | June 12, 2017 – December 29, 2017 | | $21,737.88 |

For the first period (12/16/2017 through 6/12/2017) she was effectively paid $ 538.77, or approximately $15.39 per hour for a 35 hour week.

Ms. Sebren's wildly exaggerated claims of hours worked are simply incredible, and need not be accepted. See generally, *Chen v. C & R Rock, Inc.,* 2016 DNH 060.[5] Only live testimony and cross-examination can form the basis of a fair and reasonable calculation of hours Sebren supposedly worked.

When Ms. Sebren passed the bar and was sworn in as a lawyer, her status changed. Although she claims to have performed the same tasks as before her admission, the fact of the matter is that her work mirrored that performed by lawyers in solo practice, of small law firms. Accordingly, HLA is entitled to the appropriate exemption. Moreover, she has testified that she spent inordinate uncompensated time on the Perry case. This is evidence of a joint venture, exempt from FLSA. It is consistent with Mr. Harrison's testimony respecting a fee split.

It then becomes a question of fact whether Defendant is entitled to the exemption for professionals. Ms. Sebren's own testimony is to the effect that she put considerable time into the disputed Perry case (wherein she claims a large portion of the *quantum meruit.*)

Ms. Sebren is hoist upon her own petard. Were her work product merely baby sitting and low-level administration, she could hardly claim professional work product leading to the resolution of the case.

---

[4] Plaintiff was also the beneficiary of services rendered by Defendant without charge. See, Harrison Counter Affidavit ¶ 84.
[5] Also, see statement of Genesis Sanchez, attached hereto.

26 USC 216(b) provides for liquidated damages for unpaid minimum wages and unpaid overtime compensation.

Simply stated, Defendant denies any such non-payment.  By the time this case was commenced Ms. Sebren had been paid all she was entitled to.

Accordingly, summary judgment cannot be granted.

### Sebren's RIMWA Claims

Defendant has conceded RIMWA liability, and it is It is true that, "No agreement between the employer and employee to work for less than the applicable (i.e., minimum) wage is a defense to an action (under §28-14-19.2).

As it turned out, however, Ms. Sebren's compensation equaled or exceeded the appropriate minimum wage.  She never complained until the Robert Perry fee issue arose.

Plaintiff's wage case is *de minimus*.  Her grossly exaggerated assertions of hours worked are incredible in themselves.  They are also belied by the records she did keep.

A far more realistic estimate of Ms. Sebren's hours was a standard thirty-five (35) hours per week for fifty (50) weeks. [6]  HLA never required nor requested Sebren to work in excess of forty hours per week.

This case was filed on December 10, 2015 through Plaintiff's last day of work, December 29, 2017. [7]

She was paid as follows:

December 10 through 31, 2015                    -0-

---

[6]  The defense assumes a non-paid two-week vacation.  The defense also generously assumes Ms. Sebren worked a full day on Christmas Eve and New Year's Eve.

[7] In 2016, Harrison Law Associates settled a personal injury case for Ms. Sebren for Ninety-three Hundred ($9,300) Dollars.  HLA did not charge a fee.  Accordingly, Sebren received an additional Three Thousand One Hundred ($3,100) Dollars in kind.

| | |
|---|---|
| 2016 | $21,730.66 |
| 2017 | 30,426.00 |

The Federal minimum wage for 2015 through June 30, 2016 for employees who do not receive health benefits was $8.25 per hour.

The Rhode Island minimum was:

| | |
|---|---|
| 2015-2016 | $9.00 per hour |
| 2017 | 9.60 per hour |

Ms. Sebren's own time records show that she worked a weekend eight (8) times in 2016, and eleven (11) times in 2017. Mr. Harrison only requested her to work weekends twice in 2016, and twice in 2017.

Ms. Sebren's engagement was task-oriented. Accordingly, Defendant does not concede that those hours constituted overtime.

Of the eleven (11) times Ms. Sebren clocked in on a 2017 weekend, eight (8) referenced the disputed pay case.

Mathematically then, Ms. Sebren's claim for regular wages should be:[8]

| | | | **Actually Paid** | **Balance** |
|---|---|---|---|---|
| 2015 | $ 9.00 per hr x 7 hrs x 13 days | $   882.00 | -0- | $ 882.00 |
| 2016 | 9.00 per hr x 35 hrs x 52 weeks | 16,380.00 | $ 21,330.66 | -0- |
| 2017 | 9.60 per hr x 35 hrs x 52 weeks | 17,472.00 | 30,426.00 | -0- |

**Total $ 882.00**

Plaintiff's engagement with Harrison Law Associates (hereinafter "HLA") was a creative, unique agreement whereby Ms. Sebren would keep track of her own hours. For those

---

[8] A more precise calculation would deduct the twelve (12) Rhode Island holidays.

hours HLA got paid, Plaintiff would be compensated at a rate far above the rate for a normal

clerk/typist/office worker.  This was intended to pay for those hours expended by Sebren, for

which HLA did not get paid.  It was an arrangement that was acceptable to Ms. Sebren for many

years.[9]

In any event, summary judgment must be denied when there remain disputed issues of fact.  Even

if the Court were to determine whether punitive measures are appropriate, it must consider, *inter alia*,

"the size of the employer's business, the good faith of the employer, the gravity of the violation, the

history of previous violations, and whether or not the violation was an innocent mistake or willful.  See

G.L. (1956) §28-14-19.2.

## **Defendant Casby Harrison III's Counterclaims**

## **Abuse of Process/Extortion**

*Butera v . Boucher*, 798 A.2d 340 (R.I. 2002) is the protocitation for abuse of process

cases in Rhode Island.  There, a homeowner's defense to a collection case was a false claim that

the contractor (Butera) had stolen a door.  In fact, the door had been returned for credit.

This Court defined "abuse of process":

> "abuse of process, as distinguished from malicious prosecution,
> 'arises when a legal proceeding, although set in motion in proper
> form, becomes perverted to accomplish an ulterior or a wrongful
> purpose for which it was not designed.' "*Clyne v. Doyle*, 740 A.2d
> 781, 783 (R.I. 1999)(quoting *Hillside Associates v. Stravato*,
> 664 A.2d 664, 667 (R.I. 1994)).  "The improper purpose usually
> takes the form of coercion to obtain a collateral advantage, not
> properly involved in the proceeding itself, such as the surrender
> of property or the payment of money, by the use of process as a
> threat or a club.  There is, in other words, a *form of extortion***\*\*\*"
> *See Prosser,*§ 121at 898. (Emphasis supplied.)

---

[9] Ms. Sebren's time at HLA was interrupted by a term at the Indian Counsel of Rhode Island, where she was a paid employee.  Given her level of education and experience, it is clear she was long familiar with the difference between a weekly pay check and her compensation  under this alternate arrangement.

G.L. (1956) §11-42-2, **Extortion and Blackmail**, provides in pertinent part,

> Whoever, verbally or by a written or printed communication
> . . . maliciously threatens any injury to the person, reputation, property,
> or financial condition of another, or threatens to engage in other
> criminal conduct with inte4nt thereby to extort money or any unlawful
> pecuniary advantage, or with intent to compel any person to do any act
> against his or her will . . .shall be . . . (guilt of a felony).

Plaintiff did not bring this action until the dispute arose about the disposition of the Perry

contingency fee.  It was a classic squeeze play, and Plaintiff actually admitted it:

On or about January 15, 2019, Plaintiff Sebren e-mailed to Defendant Harrison:

> "I am willing to offer to compromise before Bob initiates
> class action claims, and before I request that those include claims
> for hostile work environment, which we can easily show . . .
>
> I hope you speak to your family and friends, and consider all possible
> consequences . . ."

Thereafter, Ms. Sebren did just that.[10]

A class action federal wage and hour claim, together with "hostile work environment"

claims, have nothing to do with fee splitting.

Hostile work environment claims involve unwelcome conduct based on sex.

Offensive conduct my include, but is not limited to, offensive jokes, slurs, epithets or

name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-

downs, offensive objects or pictures, and interference with work performance.  See, generally,

EEOC, website attached, emphasizing liability for sexual harassment.

---

[10] Ms. Sebren coyly refers to an incident where Mr. Harrison asked her to hostess a gathering (Statement of Undisputed Facts, No. 30) and a salacious allegation that she found a used condom in the HLA offices. (Statement of Undisputed Fact, No. 31)  Neither have anything to do with a FLSA claim, but they have everything to do with coercion and threats of embarrassment.

Ms. Sebren's suggestion that Mr. Harrison's wife should be forewarned of her allegations is classic extortion and should be roundly condemned.

The *Butera* court also defined 'malicious prosecution,'

> . . . An action for malicious prosecution, or "wrongful civil procedure"
> lies whenever a defendant (1) has instituted or continued to press a
> civil claim; (2) which terminated in favor of the plaintiff; (3)
> when the defendant had no probable cause to believe in the validity
> of the proceeding or pursued the claim with malice toward the
> plaintiff and, consequently; (4) injured the plaintiff. *See,* W. Page Keeton,
> *Prosser). See also Nagy v. McBurney,* 120 R.I. 925, 392 A.2d 365 (1978);
> *Powers v. Carvalho,* 117 R.I. 519, 368 A.2d 1242 (1977).

When this counterclaim was filed, plaintiff's class action claims and ten-year statute claims had not yet been dismissed.  Now they have, and the Court can consider that cause of action as well.  *See,* FRCP 13(e), 15(b)(1).

Defendant's inchoate damages --- embarrassment and the like, are compensable.  However, the substantial financial damages are far more egregious.  He has incurred substantial attorney fees and costs in the defense of this case, including, but not limited to, the successful defense of the class action claims.

Mr. Harrison also deserves punitive damages for being the victim of this extortion attempt.

### **Contract, Tortious Interference, Theft**

Plaintiff and Defendant had a contract.  Whether it was an independent contractor arrangement, or employment contract, it existed.  Having conceded that Ms. Sebren's allegation that she should be classified as an employee, she then assumes certain obligations.  Those include a fiduciary duty to the employer.

In *Long v. Atl. PBS,* 681 A.2d 249 (R.I. 1996) the Supreme Court limited former

employees' solicitation of customers, preventing the use of the former employers' trade secrets

or concealing other confidential business information.

In *Wistow & Barylick v. Bowen* 2002 R.I. Supra. LEXIS 109, a departing attorney still

owed a fiduciary duty with respect to his former employer.  The client was originally the

departing lawyer's, and he gained details of the client's case utterly independently from his

position of trust and responsibility in the firm.  The distinguishing factor here is that the client

was originally referred to HLA, not Sebren.

Sebren actively sought to keep the client from meeting Mr. Harrison.  In *Wistow,* the

Court noted the same conduct on the part of Mr. Bowen.  However, it was not relevant to the

Court's ultimate decision regarding constructive trust.

Here of course, Ms. Sebren would never have had the Perry case were it not for her

association with HLA.  When she removed the Perry file in the dead of night, without any notice

or opportunity for Mr. Harrison to retain the client, she simply surreptitiously stole the client in

breach of her contractual obligation. HLA had to go to court to review the client file.

Likewise, there was an agreement with Mr. Harrison to split the fee evenly.  Ms. Sebren

denies this, and it remains a disputed fact.

"A lawyer in a firm who intends to resign and practice elsewhere has a duty to notify the

firm when the possibility becomes definite, and sometimes earlier." ABA/NBA *Lawyers'*

*Manual on Professional Conduct* (2009) § 91-701.

The *Restatement (Third) of the Law Governing Lawyers* (2000) addresses a departing

lawyer's solicitation of firm clients in Section 9(3), which states that, absent an agreement

indicating to the contrary, a lawyer who has not yet left a firm may not solicit any firm clients

until the lawyer "has adequately and timely informed the firm of the lawyer's intent to contract

firm clients for that purpose"; even then, the departing lawyer may solicit only those clients on

whose matters the lawyer is actively and substantially working." Sebren's abrupt departure

tortuously deprived Mr. Harrison of the opportunity to retain Mr. Perry as a client.

<u>Conclusion</u>

In *Hines v. Longwood Events, Inc.,* C.A. No. 1:08-cv-11653-PBS (D. Mass. June 23,

2010), the Court denied Plaintiff's motion to dismiss defendants' counterclaim for abuse of

process, which claimed that Plaintiff filed her FLSA claim for an ulterior purpose.

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment should be

denied.



Respectfully submitted,

**Defendant and Counterclaim
Plaintiff
CASBY HARRISON, III**
By his attorney,

*/s/ Gerard M. DeCelles, #1394*
1536 Westminster Street
Providence, RI 02909
Tel (40l) 272-8998
gmdlaw1@aol.com



<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 25th day of January, 2021;

**X**   I filed and served this document through the electronic filing system on the
following parties:

Matthew H. Parker, Esq.
mparker@whelancorrente.com

Robert Clark Corrente, Esq.
rcorrente@whelancorrente.com

The document electronically filed and served is available for viewing and/or downloading from the ECF Filing System.

☐   I served this document through the electronic filing system on the following parties:_____.
The document electronically served is available for viewing and/or downloading from the ECF Electronic Filing System.

☐ I mailed or ☐ hand-delivered this document to the attorney for the opposing party and/or the opposing party if self-represented, whose name is _____ at the following address _____.

*/s/:  Carol DeCelles*

 **U.S. Equal Employment Opportunity Commission**

# Harassment

Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws.

Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality. To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people.

Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance. Harassment can occur in a variety of circumstances, including, but not limited to, the following:

- The harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee.
- The victim does not have to be the person harassed, but can be anyone affected by the offensive conduct.
- Unlawful harassment may occur without economic injury to, or discharge of, the victim.

Prevention is the best tool to eliminate harassment in the workplace. Employers are encouraged to take appropriate steps to prevent and correct unlawful harassment. They should clearly communicate to employees that unwelcome harassing conduct will not be tolerated. They can do this by establishing an effective complaint or grievance process, providing anti-harassment training to their managers and employees, and taking immediate and appropriate action when an employee complains. Employers should strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed.

Employees are encouraged to inform the harasser directly that the conduct is unwelcome and must stop. Employees should also report harassment to management at an early stage to prevent its escalation.

# Employer Liability for Harassment

The employer is automatically liable for harassment by a supervisor that results in a negative employment action such as termination, failure to promote or hire, and loss of wages. If the supervisor's harassment results in a hostile work environment, the employer can avoid liability only if it can prove that: 1) it reasonably tried to prevent and promptly correct the harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

The employer will be liable for harassment by non-supervisory employees or non-employees over whom it has control (e.g., independent contractors or customers on the premises), if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action.

When investigating allegations of harassment, the EEOC looks at the entire record: including the nature of the conduct, and the context in which the alleged incidents occurred. A determination of whether harassment is severe or pervasive enough to be illegal is made on a case-by-case basis.

If you believe that the harassment you are experiencing or witnessing is of a specifically sexual nature, you may want to see EEOC's information on **sexual harassment (https://www.eeoc.gov/node/24965)**.

## Employer Coverage

15 or more employees under Title VII and the ADA, 20 or more employees under the ADEA

## Time Limits

180 days to **file a charge (https://www.eeoc.gov/employees/charge.cfm)**
*(may be extended by state laws)*

Federal employees have 45 days to **contact an EEO counselor (https://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm)**

## For more information:

- **Title VII of the Civil Rights Act (https://www.eeoc.gov/laws/statutes/titlevii.cfm)**
- **The Age Discrimination in Employment Act (https://www.eeoc.gov/laws/statutes/adea.cfm)**
- **The Americans with Disabilities Act (https://www.eeoc.gov/laws/statutes/ada.cfm)**
- **Policy & Guidance (https://www.eeoc.gov/laws/practices/harassment_guidance.cfm)**

- **Statistics (https://www.eeoc.gov/eeoc/statistics/enforcement/harassment.cfm)**

## See Also:

**Select Task Force on the Study of Harassment in the Workplace
(https://www.eeoc.gov/eeoc/task_force/harassment/index.cfm)**

- **Report of the Co-Chairs of the Select Task Force
  (https://www.eeoc.gov/eeoc/task_force/harassment/report.cfm)**
- **Executive Summary and Recommendations
  (https://www.eeoc.gov/eeoc/task_force/harassment/report_summary.cfm)**
- **Checklists and Chart of Risk Factors for Employers
  (https://www.eeoc.gov/eeoc/task_force/harassment/checklists.cfm)**
- **Highlights of the Report: PowerPoint Presentation
  (https://www.eeoc.gov/eeoc/task_force/harassment/upload/rebooting_harassment_prevention.pdf)**
  (PDF)
- **Promising Practices for Preventing Harassment
  (https://www.eeoc.gov/eeoc/publications/promising-practices.cfm)**

## AFFIDAVIT OF GENESIS SANCHEZ

The undersigned, Genesis Sanchez Tavarez, being duly sworn, upon oath deposes and says:

1. I have known Casby Harrison for roughly 7 years. I first met Casby Harrison in 2013 at a debate competition when I was a senior in high school.

2. Shortly after meeting Casby, I began working as an assistant at Harrison Law Associates. I worked part-time for Casby Harrison at Harrison Law Associates for close to four years from June 2013 through May 2017.

3. During my time at Harrison Law Associates, Casby was my boss and mentor. I knew I wanted to be a lawyer and working at Harrison Law Associates gave me the exposure to law I needed to cement my desire to become a lawyer. To this day, Casby and I continue to remain in contact and he is still my mentor as I start my own legal career.

4. While at Harrison Law Associates, I took direction from Casby Harrison and Sarah Sebren. I was in the office anywhere from 3 to 5 days per week.

5. I had occasion to interact with Sarah Sebren frequently during my four years of employment with Harrison Law Associates.

6. Sarah Sebren and I had a great deal of flexibility when it came to our work hours.

7. Sarah Sebren and I were able to take time out of the office when needed.

8. Casby Harrison did not require me to work on weekends. I did not get the sense that Sarah Sebren was required to work weekends either.

9. In my opinion, there were plenty of times when the office was busy, but I do not believe it was so busy that working overtime was required.

/s/ Genesis Sanchez
Genesis Sanchez

 **U.S. Equal Employment Opportunity Commission**

# Harassment

Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws.

Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality. To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people.

Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance. Harassment can occur in a variety of circumstances, including, but not limited to, the following:

- The harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee.
- The victim does not have to be the person harassed, but can be anyone affected by the offensive conduct.
- Unlawful harassment may occur without economic injury to, or discharge of, the victim.

Prevention is the best tool to eliminate harassment in the workplace. Employers are encouraged to take appropriate steps to prevent and correct unlawful harassment. They should clearly communicate to employees that unwelcome harassing conduct will not be tolerated. They can do this by establishing an effective complaint or grievance process, providing anti-harassment training to their managers and employees, and taking immediate and appropriate action when an employee complains. Employers should strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed.

Employees are encouraged to inform the harasser directly that the conduct is unwelcome and must stop. Employees should also report harassment to management at an early stage to prevent its escalation.

# Employer Liability for Harassment

The employer is automatically liable for harassment by a supervisor that results in a negative employment action such as termination, failure to promote or hire, and loss of wages. If the supervisor's harassment results in a hostile work environment, the employer can avoid liability only if it can prove that: 1) it reasonably tried to prevent and promptly correct the harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

The employer will be liable for harassment by non-supervisory employees or non-employees over whom it has control (e.g., independent contractors or customers on the premises), if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action.

When investigating allegations of harassment, the EEOC looks at the entire record: including the nature of the conduct, and the context in which the alleged incidents occurred. A determination of whether harassment is severe or pervasive enough to be illegal is made on a case-by-case basis.

If you believe that the harassment you are experiencing or witnessing is of a specifically sexual nature, you may want to see EEOC's information on **sexual harassment (https://www.eeoc.gov/node/24965)** .

## Employer Coverage

15 or more employees under Title VII and the ADA, 20 or more employees under the ADEA

## Time Limits

180 days to **file a charge (https://www.eeoc.gov/employees/charge.cfm)**
*(may be extended by state laws)*

Federal employees have 45 days to **contact an EEO counselor (https://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm)**

## For more information:

- **Title VII of the Civil Rights Act (https://www.eeoc.gov/laws/statutes/titlevii.cfm)**
- **The Age Discrimination in Employment Act (https://www.eeoc.gov/laws/statutes/adea.cfm)**
- **The Americans with Disabilities Act (https://www.eeoc.gov/laws/statutes/ada.cfm)**
- **Policy & Guidance (https://www.eeoc.gov/laws/practices/harassment_guidance.cfm)**

 **U.S. Equal Employment Opportunity Commission**

# Sexual Harassment

It is unlawful to harass a person (an applicant or employee) because of that person's sex. Harassment can include "sexual harassment" or unwelcome sexual advances, requests for sexual favors, and other verbal or physical harassment of a sexual nature.

Harassment does not have to be of a sexual nature, however, and can include offensive remarks about a person's sex. For example, it is illegal to harass a woman by making offensive comments about women in general.

Both victim and the harasser can be either a woman or a man, and the victim and harasser can be the same sex.

Although the law doesn't prohibit simple teasing, offhand comments, or isolated incidents that are not very serious, harassment is illegal when it is so frequent or severe that it creates a hostile or offensive work environment or when it results in an adverse employment decision (such as the victim being fired or demoted).

The harasser can be the victim's supervisor, a supervisor in another area, a co-worker, or someone who is not an employee of the employer, such as a client or customer.

## Employer Coverage

15 or more employees

## Time Limits

## AFFIDAVIT OF GENESIS SANCHEZ

The undersigned, Genesis Sanchez Tavarez, being duly sworn, upon oath deposes and says:

1. I have known Casby Harrison for roughly 7 years. I first met Casby Harrison in 2013 at a debate competition when I was a senior in high school.

2. Shortly after meeting Casby, I began working as an assistant at Harrison Law Associates. I worked part-time for Casby Harrison at Harrison Law Associates for close to four years from June 2013 through May 2017.

3. During my time at Harrison Law Associates, Casby was my boss and mentor. I knew I wanted to be a lawyer and working at Harrison Law Associates gave me the exposure to law I needed to cement my desire to become a lawyer. To this day, Casby and I continue to remain in contact and he is still my mentor as I start my own legal career.

4. While at Harrison Law Associates, I took direction from Casby Harrison and Sarah Sebren. I was in the office anywhere from 3 to 5 days per week.

5. I had occasion to interact with Sarah Sebren frequently during my four years of employment with Harrison Law Associates.

6. Sarah Sebren and I had a great deal of flexibility when it came to our work hours.

7. Sarah Sebren and I were able to take time out of the office when needed.

8. Casby Harrison did not require me to work on weekends. I did not get the sense that Sarah Sebren was required to work weekends either.

9. In my opinion, there were plenty of times when the office was busy, but I do not believe it was so busy that working overtime was required.

/s/ Genesis Sanchez
Genesis Sanchez