UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| SARAH SEBREN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-CV-00667-MSM-PAS |
| | ) | |
| CASBY HARRISON, III, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

## I. PROCEDURAL POSTURE

This wage dispute action was tried without a jury for three days in February and March 2022. The case is awaiting final decision on the merits. When the evidence closed at trial, the defendant, Mr. Harrison, moved for Partial Summary Judgment on the Plaintiff's claim that he had violated the Fair Labor Standards Act ("FLSA") in any respect and, for evidentiary insufficiency, that he had violated it regarding Ms. Sebren's alleged overtime work. A full discussion of the claims Ms. Sebren brought, and Mr. Harrison's counterclaims is contained in this Court's previous decision, *Sebren v. Harrison*, 552 F. Supp. 3d 249 (D.R.I. 2021), and only those facts necessary to a determination of the issues before the Court now are discussed.

1

The Court reserved decision when Mr. Harrison first made this motion orally at the close of the plaintiff's case under Fed. R. Civ. P. 52(c).[1] It was renewed at the close of all the evidence (Tr. 3 at 93) and addressed by both parties in post-trial memoranda. (ECF Nos. 90, 91.) There are three bases for the motion: (a) that the FLSA does not apply in any respect because the plaintiff failed to carry her evidentiary burden of showing that "Defendant was engaged in Interstate activity;" (b) that the FLSA claim, were it to survive, should be limited to two years because the plaintiff has failed to carry her evidentiary burden of showing an intentional violation; and (c) that the plaintiff's claim for overtime pay should be dismissed for want of any evidence "that Defendant requested her to work overtime; had no reason [sic] to know she purportedly worked overtime, and her own time records do not support any claim of overtime."

Mr. Harrison seeks a ruling on his motion before the parties are required to file post-trial memoranda on the remaining claims.

---

[1] When Mr. Harrison first raised this issue, he claimed only that Ms. Sebren had not shown "that Ms. Sebren's work *as a lawyer in Rhode Island, admitted only in Rhode Island*, had anything to do with interstate activity, so I think that defeats the FLSA claim of an issue." Tr. 2 at 165 (emphasis supplied). But Ms. Sebren's work as a lawyer under the FLSA is not part of her claim for minimum wage and overtime, as the FLSA exempts professional employees entirely. She is claiming a violation of the minimum wage and overtime entitlements for her work as a paralegal and administrative aide. Her work as an attorney is only relevant to the claims made under Rhode Island law from which she was not exempted because she was not paid a salary of at least $200 per week. *See Sebren,* 552 F. Supp. 3d at 258; R.I.G.L. § 28-12-4.3(a)(4). In his post-trial memorandum, Mr. Harrison addresses her non-lawyer work.

The Court agrees it is an appropriate time to decide *one* of the defendant's asserted arguments, but not all. The only question the Court considers at this time is whether coverage under the FLSA has already been decided in the earlier granting of partial summary judgment to Ms. Sebren. This is a question of law.

Mr. Harrison's second argument – that Ms. Sebren did not produce enough credible evidence to support a claim for overtime -- is inextricably interwoven with other issues of fact and credibility. In addition, Mr. Harrison's third argument – that insufficient evidence of willfulness has been adduced to support a three-year statute of limitations under FLSA – is not appropriately decided separately from general questions of credibility; the Court has yet to address what damages, if any, are due Ms. Sebren regarding not only the FLSA claim but others as well. The issues of willfulness of any FLSA violation and the correlate statute of limitations are best addressed when the remaining merits are decided. Therefore, respecting the second and third arguments posed by Mr. Harrison, the Court denies the motion *pro forma* and will address them when it decides the case finally on the merits.

## II.   ANALYSIS

Ms. Sebren's claim under the FLSA, beyond the overtime issue alluded to, is that Mr. Harrison failed to pay her minimum wage for the time she worked for him as an assistant/paralegal.[2]  for an employee to invoke the protection of the FLSA's

---

[2] She also worked for him as an attorney for approximately six (6) months, but the FLSA exempts professional employees from its minimum wage requirement. 29 U.S.C. § 213(a)(1).

3

guarantee of minimum wage, however, she must have been engaged in commerce, either because her own work "engaged [her] in commerce" or because she was "employed in an enterprise engaged in commerce." 29 U.S.C. § 206(a). These doctrines are known respectively as "individual coverage" and "enterprise coverage." Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Mr. Harrison contends that there was insufficient evidence produced at trial to show that Ms. Sebren qualified as an employee under the FLSA. Ms. Sebren responds that this question was settled by stipulation well before trial and, because of that stipulation, was settled by the Court in its earlier grant of partial summary judgment on liability under the FLSA to Ms. Sebren. Relatively early in these proceedings, the parties stipulated that

> Until Plaintiff Sarah Sebren ("Sebren") obtained her law license on June 12, 2017, Defendant Casby Harrison, III ("Harrison") only paid Sebren as an independent contractor *even though she qualified as an employee under the Fair Labor Standards Act*, the Rhode Island Minimum Wage Act, and the Rhode Island Payment of Wages Act.

(emphasis supplied) (ECF No. 54, filed Sept. 3, 2019.)

On August 5, 2021, the Court granted Partial Summary Judgment with respect to liability in favor of Ms. Sebren on her FLSA claim and her state law wages claims. (ECF No. 75, at 2.) *Sebren,* 552 F. Supp. 2d at 255. In doing so, the Court relied explicitly on the Stipulation. "As for liability under the FLSA and the RIPWA,

4

the parties have entered a stipulation agreeing that Ms. Sebren was paid as an independent contractor even though she qualified as an employee." *Id.*

Mr. Harrison now maintains that in signing the Stipulation he meant to stipulate only that Ms. Sebren's work fit the classification of "employee" rather than "independent contractor," but he asserts that he did not intend to agree that she was a *covered* employee at all under the FLSA. (ECF No. 91, at 2-3.) He argues that because, in his view, the Stipulation did not prove her coverage under the FLSA, she was required to prove it at trial and did not. *Ergo,* he reasons, he is entitled to judgment on the FLSA claim in both its minimum wage and overtime components.

The Court rejects this argument for three reasons: (1) First, in the Court's view, the Stipulation is clear in its meaning and does not support Mr. Harrison's position; (2) the Court made clear in its earlier decision how it read the Stipulation and at no time did Mr. Harrison seek to be relieved from the Stipulation as the Court construed it; and (3) enforcement of the Stipulation is not unfair because Ms. Sebren produced enough uncontradicted evidence at trial to support her coverage as a qualified employee under the FLSA.

### A. Mr. Harrison Stipulated to Coverage under the FLSA

The Stipulation clearly declared that Ms. Sebren "qualified as an employee under the Fair Labor Standards Act . . . ." It carried no caveat such as Mr. Harrison would like the Court to read into it now. He would like the Court to read it as if it said, "if Ms. Sebren qualified under the FLSA at all, she qualified as an employee." The meaning of a Stipulation is a question of law that follows basic contract

5

principles. *Gomez v. Rivera Rodriguez,* 344 F.3d 103, 121 (1st Cir. 2003). Mr. Harrison is himself an attorney and was represented at the time by an attorney. *Id.* ("Counseled parties freely agreed upon [the] language, and we see no reason either to disturb or to distort the plain meaning of the language that they chose."). It is not plausible to believe that the Stipulation was as limited as Mr. Harrison now maintains; at the very least, if it had been intended to be limited solely to the "independent contractor" issue, he would have only stipulated that he mischaracterized her as an independent contractor. The word "mischaracterization" does not appear in the Stipulation. Being a covered employee under the FLSA has *two* components: that one is an employee, as distinguished from some other kind of worker, and that one is engaged in commerce. When he stipulated she "qualified as an employee under the [FLSA]," that satisfied both criteria.

It is more plausible that Mr. Harrison did not at that time intend to contest that Ms. Sebren was "engaged in commerce" and for that reason did not limit the Stipulation. This inference is borne out by the fact that at no time prior to trial did he raise this issue. Indeed, although he opposed Ms. Sebren's Motion for Partial Summary Judgment, nowhere did he make the claim that she was not covered under the FLSA because she was not "engaged in commerce" when she worked for him. That surely would have been an obvious basis on which to oppose Partial Summary Judgment if he believed he had not already stipulated to it. Moreover, he did not identify as a disputed fact whether her job description or the work she actually did caused her to be "engaged in commerce." If he disputed the facts that she alleges

6

constituted "engage[ment] in commerce," he should have opposed summary judgment on that basis, which he did not. He could have submitted facts by way of an affidavit or otherwise that her work involved only *intra*-state matters, which he did not. If her actual work did not constitute "commerce" he as the person who directed her work would certainly possess facts necessary to make that argument.

Ms. Sebren did not hide her position that she was "engaged in commerce." Her Amended Complaint, at that time seeking class certification, alleged that she (and others) "engaged in commerce, through (among other things) representing clients across state lines, sending correspondence and making telephone calls across state lines, and traveling across state lines." (ECF No. 7, ¶ 44.) For his part, Mr. Harrison denied those assertions, so they could not have escaped his attention. (ECF No. 14, § 44.) That he did not intend to contest that Mr. Sebren was covered by the FLSA is further evidenced by his referring in his summary judgment memorandum to the Stipulation as a "concession," i.e., that it intended to concede liability under the FLSA. In that memorandum, Mr. Harrison addressed the statute of limitations and damages under the FLSA, *id.* at 4-6, but he never addressed whether Ms. Sebren was "engaged in commerce" which he surely would have if he thought it was in dispute. (ECF No. 70, at 4-6.)[3]

---

[3] Similarly, Mr. Harrison did not seem to contest at trial individual coverage based on Ms. Sebren's duties although he introduced evidence that his gross annual receipts were less than $500,000 and therefore defeated enterprise coverage. He could have attempted to show that all her telephone calls were in state, that she did not send mail out of state, that she did not work on files concerning out of state clients or incidents, and the like. If he really believed going into the trial that coverage under

7

There is a final reason why the Stipulation meant what it seems to say: an agreement that Ms. Sebren was mischaracterized as an independent contractor under the FLSA but was not *covered* by the FLSA is, simply, nonsensical. If she did not come within the FLSA at all, as Mr. Harrington now argues, misclassification would not be an issue: she would not need to be characterized at all under the FLSA unless its provisions applied to her. It would have been foolish to even agree she was "mischaracterized" under the FLSA without at least implicitly intending to agree that her work came within its embrace.

### B. Mr. Harrison Never Sought Relief from the Stipulation

If Mr. Harrison believed the Court was construing the Stipulation more broadly than he had intended, he would have moved for relief from it once the decision of the Court made that clear. A party may be relieved of a Stipulation for good cause if the other party is not unfairly prejudiced. *Amer. Honda Motor Co. v. Lundgren, Inc.*, 314 F.3d 17, 21 (1st Cir. 2002). "'Good cause' does not typically include a change of heart on a litigation strategy," *Martinez v. Petrenko,* 792 F.3d 173, 180 (1st Cir. 2015), but the failure to even attempt to be relieved of the Stipulation belies Mr. Harrison's post-trial claim that he did not intend the Stipulation to be construed as the Court read it. Stipulations are highly favored, but a "clear mistake" can be corrected. *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26, 32 (1st Cir. 2007). In *Chao,* the Court memorialized a Stipulation in a pretrial Order; the defendant, although later

---

the FLSA was still an open issue after the Stipulation, he would have presumably defended on that ground.

claiming "mistake," neither moved to strike the reference nor moved for reconsideration, letting the Court's reliance on the Stipulation become law of the case. *Id.* at 33. Similarly here, Mr. Harrison's failure to take any action in response to what he alleges was the Court's misreading of the Stipulation renders his argument now untimely.

### C. Giving Effect to the Stipulation Is Not Unfair

Mr. Harrison has not actually moved to be relieved of the effect of the Stipulation. The Court, however, nonetheless feels an obligation to satisfy itself that giving binding effect to the Stipulation is not unfair or inequitable. The Court is satisfied that evidence adduced by Ms. Sebren, and uncontradicted by any evidence offered by Mr. Harrison at trial, established that Ms. Sebren was "engaged in commerce" and therefore covered under the FLSA. The Court also notes that at the close of the trial the record was deliberately kept open with consent of *both* parties to receive any new evidence specifically on this issue. (Tr. 3 at 96). While Ms. Sebren requested a further opportunity to produce evidence *if* the Stipulation were held not dispositive, Mr. Harrison neither submitted any additional evidence on individual coverage while the record remained open nor proffered that he would do so if he had a further opportunity. (ECF No. 90, 91).

The definition of "engaged in commerce" is very broad. *Linnville v. RW Properties, LLC,* C.A. 6:13-cv-00542-BHH, 2015 WL 196372, at *3 (D.S.C. Jan. 15, 2015). Coverage is to be "construed liberally to apply to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Assoc.,* 358

9

U.S. 207, 211 (1959). "Any regular contact with commerce, no matter how small, will result in coverage." *Williams v. Henagan,* 595 F.3d 610, 621 (5th Cir. 2010) (a prisoner who did odd jobs for the town's Mayor was not engaged in commerce). The burden of an employee to show she was "engaged in commerce" and is therefore entitled to the protection of the FLSA is not a heavy one and "rarely difficult to establish." *Demaree v. Oriental Med. Clinic,* No. 20-cv-443 RP, 2021 WL 107213, at *1 (W.D. Tex. Jan. 12, 2021) (quoting *Jacobs v. New York Foundling Hosp.,* 577 F.3d 93, 99 (2d Cir. 2009).

Ms. Sebren met her burden of showing that she, as an individual, was engaged in commerce, and that evidence was uncontradicted. Therefore, holding Mr. Harrison to the Stipulation is neither unfair nor inequitable. Both before and after she was admitted to practice law, Ms. Sebren did a variety of chores that sufficiently utilized the instruments of commerce to constitute "engaging in commerce." She answered the telephone and made telephone calls related to cases, she opened mail and sent correspondence on Mr. Harrison's behalf related to clients, she filed court documents, she made travel arrangements including at least one out of the country, and she handled credit card transactions and billing; she utilized internet applications on Mr. Harrison's behalf such as electronic document filing, online banking, and his social media account. Mr. Harrison testified he was admitted to the Bar in Massachusetts and a fair inference is that his practice included Massachusetts cases and/or clients.[4]

---

[4] Mr. Harrison testified that after she graduated law school in 2010, even though she was not admitted to the Bar until 2017, Ms. Sebren "prepare[d] the first draft of *most* legal pleadings . . . . [,] the first draft of interrogatories and requests for documents .

At least two of his cases that were pending during the relevant time were appealed to the First Circuit Court of Appeals; those proceedings would have required sending filings electronically or by mail to Boston. *Solola v. Prospect Chartercare RWMC, LLC,* No. 16-35 WES, 2019 WL 1382279, at *1 (D.R.I. Mar. 27, 2019); *Luceus v. State of R.I.,* No. 1:15-cv-00489-WES-LDA (D.R.I.), *appeal* 923 F.3d 255 (1st Cir. 2019).[5] *Solola* was co-counseled with a Massachusetts attorney. Typical jobs performed by paralegals, secretaries, and administrative assistants satisfy the "engaged in commerce" criterion. *Urquia v. Law Office of Kyle Courtnall, PLLC*, No. 1:14-cv-00056, 2014 WL 12519795, at *3 (E.D. Va. May 19, 2014) (paralegal); *Demaree v. Oriental Med. Clinic,* No. 20-cv-443, 2021 WL 107213, at *1 (W.D. Tex. Jan. 12, 2021) (front desk worker); *Kingsberry v. Paddison,* No. C.A. 20-3192, 2021 WL 1909727, at *1 (E.D.La. May 12, 2021) (paralegal). "Any regular contact with [interstate] commerce, no matter how small, will result in coverage." *Demaree,* at *2 (weekly phone calls and handling gift cards sufficient). Mr. Harrison himself lived in Massachusetts and communicated with Ms. Sebren by text and phone. (Tr. 3 at 18.)

---

. . [,] the first draft of our client's answers . . . ." She also "obtained[ed] the medical records and the medical bills on *all* of the personal injury cases that came into the office." Tr. 2 at 175 (emphasis supplied). The only reasonable inference from this testimony is that any cases Mr. Harrison worked on involving proceedings in Massachusetts or out of state clients were cases Ms. Sebren worked on as well. He also arranged for, and paid for, her membership in Business Network International, an international professional referral group that met often with "probably 25 chapters between Westerly and southern Massachusetts." Tr. 2 at 185-86.

[5] The Court takes judicial notice of these dockets. *Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir. 1990). Ms. Sebren also testified that she worked on the *Luceus* case. Tr. 1 at 83-84, 87-88.

Examples of specific evidence produced by Ms. Sebren establish that her duties involved interstate commerce.[6] Mr. Harrison had the knowledge to dispute these facts if they were not true.

### III.   CONCLUSION

In its ruling finding liability against the defendant under the FLSA, the Court relied heavily on the Stipulation of the parties. It sees no reason to depart from that reliance. The Stipulation is clear in what it says, the Court's interpretation of it is supported by the failure of the defendant at any point along the way until after trial to indicate otherwise, and adherence to the Stipulation is not unfair because Ms. Sebren's proof was consistent with it. Therefore, Mr. Harrison's Rule 52 Motion is DENIED.

IT IS SO ORDERED:

_____
Mary S. McElroy,
United States District Judge
April 8, 2022

---

[6] *See e.g.* Plt. Exh 1-a at SS464 (Ms. Sebren was to call a client while she was out of Rhode Island); SS467 (Ms. Sebren picking up a check from a Massachusetts client, and processing payments through an electronic BillPay); SS469 (she did the online banking which undoubtedly would have utilized an internet application); SS 472 (Mr. Harrison telling her to hold onto stamps because she was the one who handled postal service mail); SS507 (discussion of call to a client with a non-Rhode Island area code); SS511 (same); Plaintiff's Exhibit 1-b at 5535 and Tr. 1 at 43 (she handled aspects of his Facebook account); SS539 (client with non-Rhode Island area code); SS541-42 (discussion regarding Ms. Sebren driving Mr. Harrison to the airport); SS549 (she processed client payments by credit card); SS564-65 (she booked his flight to Atlanta). Ms. Sebren also registered Mr. Harrison for an event in Dayton [Ohio] and booked his flight. (Plaintiff's Exhibit 33, TR 1 at 38, 44).

13